UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FREDRICK MARTEZ MARTIN #338567,

        Plaintiff,

v.

DAVE RINK, et al.,

        Defendants.
_____/

Case No. 2:18-cv-00066

Hon. Gordon J. Quist
U.S. District Judge

## **REPORT AND RECOMMENDATION**

### Introduction

This is a civil rights action brought by state prisoner Fredrick Martez Martin pursuant to 42 U.S.C. § 1983. Plaintiff filed his complaint on May 2, 2018, alleging that Defendants Chaplain Dave Rink, former Special Activities Coordinator Michael Martin, Special Activities Coordinator David Leach, and Deputy Director Kenneth McKee violated his religious rights (1) by preventing him from eating an Islamic Halal meal or an appropriate alternative, and (2) by restricting his access to certain religious materials, while he was confined at the Chippewa Correctional Facility. Defendants filed a motion for summary judgment (ECF No. 9) on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff did not file a response.

A review of the administrative record reveals that Plaintiff failed to name Defendant Leach, Martin and Rink in the grievance he filed relating to his right to

eat meals meeting the requirements of his religion, and also failed to challenge limitations to his access to certain religious materials. Thus, the undersigned respectfully recommends that the Court (1) grant summary judgment to Defendants Leach, Martin, and Rink due to Plaintiff's failure to exhaust his administrative remedies against them, and (2) dismiss Plaintiff's claims relating to his access to religious materials. If the Court accepts this recommendation only Defendant McKee will remain as a Defendant in this action.

## Plaintiff's Allegations

In his complaint, Plaintiff states that he is a Muslim and a member of the Nation of Islam. (ECF No. 1: Complaint, PageID.4.) Plaintiff asserts that he was approved to eat from the Religious Meal line in 2014. (*Id.* at PageID.6.) Plaintiff further explains that he accepted the Kosher line as an acceptable alternative to an Islamic Halal menu. Plaintiff alleges that the MDOC discontinued the Kosher meal line in November of 2013, based upon a settlement in *Dowdy-El v. Caruso*. (*Id.*)

Defendant explains that, as a result of this settlement, the MDOC adopted a vegan Religious meal that would comply with all faith requirements. An alternative meal could be requested if a prisoner believed that the vegan meal did not comply with a sincerely held belief. (*Id.*)

Plaintiff says that he was then informed by his religious representative that the vegan meal did not comply with his religious requirements. Plaintiff requested an alternative menu and was given a test by Chaplain Rink. Chaplain Rink informed

Plaintiff that the MDOC did not have an alternative meal and never intended to provide one for Muslims. (*Id.* at PageID.7.)

Plaintiff alleges that this meal program places a substantial burden on his ability to practice his religion. (*Id.*)

Plaintiff also asserts that certain Nation of Islam books have been banned by Defendants, such as "How to Eat to Live vol. I & II, Our Savior Has Arrived, Secret Relationship between Blacks and Jews, and Supreme Wisdom." Some lectures from Messenger Elijah Muhammad and Minister Louis Farrakhan have been banned. (*Id.* at 9.)

Plaintiff alleges that he needs these publications and materials to better understand his faith.

Plaintiff alleges that his First Amendment and Religious Land Use and Institutionalized Persons Act, (RLUIPA), 42 U.S.C. § 2000cc-1 (2003), and equal protection rights were violated by Defendants.

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a

matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit repeatedly has emphasized that the party with the burden

4

of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel*, 270 F.3d at 1056 (citing 11 James William Moore, et al., *Moores Federal Practice* § 56.13[1], at 56-138 (3d ed. 2000)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19.

In rare circumstances, the grievance process will be considered unavailable, such as where officers are unable or consistently unwilling to provide relief, where

5

the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P.

If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that

6

prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[1]

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD.

---

[1] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ V of Policy Directive 03.02.130. *Id.* at ¶ Q. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

## Plaintiff's Grievance

Defendant McKee concedes that Plaintiff exhausted his administrative remedies against him. Defendants Martin, Leach, and Rink, however, argue that Plaintiff failed to exhaust his administrative remedies against them. In addition, Defendants argue that Plaintiff failed to exhaust his claim that he was denied books, publications, and lecture materials regarding his religious beliefs.

Plaintiff filed **Grievance URF-16-11-4118-20E** with an incident date of November 27, 2016. Plaintiff alleged that McKee, John/Jan Doe, and URF Food Service Director Gugin violated Plaintiff's RLUIPA, First and Fourteenth Amendment rights. Plaintiff asserted that as a Nation of Islam prisoner he was required to follow "How to Eat to Live Vol. I & II" by Hon. Elijah Muhamad. Plaintiff asserted that he is prohibited from eating potatoes, grits, peanut butter, soy products, pinto beans, black beans, and burger. Plaintiff requested alternative foods in his Step I grievance. (ECF No. 10-3, PageID.105.)

The Step I response stated that an offer was made to interview Plaintiff for the alternative meal request. Plaintiff refused the offer in order to pursue his Step II grievance. (*Id*.) At Step II, Plaintiff alleged that his Step I response was late and that he took a test on January 11, 2017. At that time, Defendant Rink told him that there was no alternative meal for the vegan diet. (PageID.103).

The Step II respondent acknowledged that the Step I response was untimely. The response indicated that the vegan meal was designed to meet the needs of Kosher and Halal religious tenets. Prisoners may request an alternative meal, which would

9

be approved by the Deputy Director if it was determined appropriate. Plaintiff was interviewed regarding his alternative meal request by the Chaplain. At that time, his request had not been denied. Defendant Rink submitted Plaintiff's request to the Central Office. There was nothing more that could be done at the facility level. (PageID.104.)

Plaintiff's Step III appeal was denied. (PageID.106.)

## Analysis

The record before this Court indicates that Plaintiff failed to name Defendants Rink, Martin, and Leach in his Step I grievance. The MDOC requires a prisoner to identify the individuals being grieved, *Reed-Bey*, 603 F.3d at 324-25, and the subject matter of the grievance. *Mattox*, 851 F.3d at 596. Plaintiff must name each defendant in a properly exhausted grievance before he files a federal complaint. *Kean v. Hughes*, No. 1:12-cv-847, 2013 WL 5771146 at *2 (W.D. Mich. Oct. 24, 2013) ("The MDOC had no reason to address a claim against any other employee"). Thus, this grievance does not establish that Plaintiff exhausted his administrative remedies relating to his claims against Defendants Rink, Martin, and Leach.

In addition, Plaintiff failed to file a grievance relating to restrictions on his access to certain religious books, publications, and lecture materials. Therefore, Plaintiff's claims regarding these issues are unexhausted.

## Recommendation

The undersigned respectfully recommends that the Court (1) grant Defendants Leach, Martin, and Rink's motion for summary judgment (ECF No. 9)

due to Plaintiff's failure to exhaust his administrative remedies against them, and (2) dismiss Plaintiff's claims relating to his access to religious materials. .

If the Court adopts this recommendation the remaining claims would be Plaintiff's claims under the First Amendment, the Religious Land Use and Institutionalized Persons Act, (RLUIPA), 42 U.S.C. § 2000cc-1 (2003), and the Fourteenth Amendment Equal Protection Clause against Defendant McKee.

Dated:   June 3, 2019                         /s/ *Maarten Vermaat*
                                              MAARTEN VERMAAT
                                              U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).